UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **J & M Distributing, Inc.,** | Civil No. 13-CV-72 (SRN/TNL) |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| **Hearth & Home Technologies, Inc. and Magnotti and Sons, Inc. d/b/a The FirePlace and ThePatioPlace,** | |
| Defendants. | |

---

George G. Eck and Jaime Stilson, Dorsey & Whitney, LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402, and Ray C. Stoner, Jackson Kelly, PLLC, Three Gateway Center, 401 Liberty Avenue, Suite 1340, Pittsburgh, Pennsylvania 15222, for Plaintiff

Kelly W. Hoversten and Quentin R. Wittrock, Gray Plant Mooty Mooty & Bennett, PA, 80 South Eighth Street, Suite 500, Minneapolis, Minnesota 55402, for Defendant Hearth & Home Technologies, Inc.

Cory D. Olson and Courtland C. Merrill, Anthony Ostlund Baer & Louwagie, PA, 90 South Seventh Street, Suite 3600, Minneapolis, Minnesota 55402, and D. Scott Lautner, Law Offices of D. Scott Lautner, PC, 68 Old Clarton Road, Pittsburgh, Pennsylvania 15236, for Defendant Magnotti and Sons

---

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on cross-Daubert motions filed by Defendant

Hearth & Home Technologies, Inc. ("HHT") and Plaintiff J & M Distributing, Inc.

("J&M"):  HHT's Motion to Exclude the Expert Testimony and Opinions of Michael DeProspero [Doc. No. 133] and J&M's Motion to Exclude Certain Testimony and Opinions of Melissa Snelson [Doc. No. 139].  For the reasons set forth herein, HHT's motion is denied and Plaintiff's motion is granted.  Also before the Court is HHT's Motion to Strike the Supplemental Testimony of Michael DeProspero and for an Expedited Hearing [Doc. No. 148], which is denied in part and denied as moot in part, as discussed herein.

**I.   BACKGROUND**

The specific details of this lawsuit are documented in other orders and will not be recounted here.  (See, e.g., Mem. Op. & Order of 7/8/14 at 1-31 [Doc. No. 120].)  In brief, J&M is a former HHT distributor of fireplace and hearth products.  Following HHT's termination of the parties' distribution relationship, J&M filed this suit against HHT and one of HHT's dealers, Defendant Magnotti and Sons, Inc. ("Magnotti").  In light of the Court's ruling on Defendants' summary judgment motions, the following four claims remain in suit: (1) breach of contract, which includes a claim for the breach of the duty of good faith and fair dealing (Am. Compl., Count I [Doc. No. 50]; (2) tortious interference with business relations (id., Count II); (3) civil conspiracy (id., Count IV); and (4) violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 (id., Count V).  Plaintiff seeks the fair market value of its business and lost profits among its damages.  (Id. ¶¶ 60, 67.)  Trial on this matter is scheduled to begin on January 12, 2015.

Plaintiff contends that any compensation that it receives in this case must be tied to

the fair market value of J&M's business, prior to any harmful effects that it experienced based on the Defendants' alleged conduct. (Pl.'s Opp'n Mem. at 17 [Doc. No. 146].) That value, Plaintiff asserts, is derived from "what a buyer would have been willing to pay for J&M's business." (Id.) After this litigation began, J&M retained Michael DeProspero as its damages expert. Specifically, J&M asked DeProspero to: (1) value J&M's business as of December 31, 2011 – a date prior to the March 2012 termination of J&M as a two-step distributor; and (2) determine net profits associated with certain sales that Plaintiff intends to prove it was required to make as a result of HHT's conduct. (Pl.'s Opp'n Mem. at 2 [Doc. No. 146].) After reviewing documents and data,[1] and applying his methodology, DeProspero concluded that: (1) J&M's valuation at the end of 2011 was $3,487,664 (DeProspero Report at 5, Ex. 1 to Hoversten Decl. [Doc. No. 136-1]); and (2) J&M sustained lost net profits totaling approximately $175,000. (Id. at 5-6, Table 1.)

HHT moves to strike DeProspero as an expert for Plaintiff, arguing that DeProspero is not qualified to render his opinion and that his opinion is inadmissible at trial because it is not relevant and his methodology is flawed. (HHT's Mem. Supp. Mot. to Exclude DeProspero at 1-2 [Doc. No. 135].) In response, J&M contends that DeProspero is qualified to proffer opinions in this matter, his valuation opinions are

---

[1] DeProspero reviewed J&M's financial statements, payroll information, a summary plan description of J&M's 401(k) plan, an actuarial report, publicly available information about HHT, and documents related to the litigation, including the Amended Complaint and the Court's Memorandum Opinion and Order of July 7, 2014. (Schedule A to DeProspero Report, Ex. 1 to Hoversten Decl. [Doc. No. 136-1].)

relevant and reliable, and will assist the jury in determining the total value of J&M's losses. (Pl.'s Opp'n Mem. at 11-25 [Doc. No. 146].) In support of its opposition memorandum, J&M filed the Declaration of Michael DeProspero [Doc. No. 147]. HHT also moves to strike the DeProspero Declaration, arguing that both the Declaration, as well as the information contained in Footnote 6 in J&M's opposition brief, should have been previously disclosed pursuant to Fed. R. Civ. P. 26. (HHT's Motion to Strike at 1 [Doc. No. 148].)

For its rebuttal expert, HHT hired Melissa Snelson to respond to DeProspero's Report. (Snelson Report at 1, Ex. 1 to Stilson Decl. [Doc. No. 142-1].) Snelson challenges the relevance and reliability of DeProspero's methodology. (Id. at 3-15.)

J&M moves to strike portions of Snelson's opinion. (Pl.'s Mot. to Exclude Portions of Snelson Testimony & Opinions at 9 [Doc. No. 141].) Specifically, J&M seeks to exclude portions of Snelson's opinion that address liability. (Id. at 5-6.) J&M does not challenge Snelson's qualifications, nor does J&M seek to exclude Snelson's opinion in its entirety. (Id. at 2, n.1.) In response, HHT argues that the underlying facts and assumptions that support Snelson's opinion are not subject to exclusion. (HHT's Opp'n Mem. at 1 [Doc. No. 145].)

## II. DISCUSSION

### A. Motion to Strike

As an initial matter, the Court addresses HHT's Motion to Strike the DeProspero Declaration [Doc. No. 148], because Plaintiff relies on the DeProspero Declaration [Doc.

No. 147] in opposing HHT's <u>Daubert</u> motion.  HHT moves to strike the Declaration [Doc. No. 147], which contains additional information regarding DeProspero's qualifications, and also moves to strike Footnote 6 in J&M's opposition memorandum [Doc. No. 146], which describes DeProspero's basis for applying a 2.029 multiplier in determining J&M's book value.[2]  (HHT's Motion to Strike at 1 [Doc. No. 148].)  HHT argues that by relying on the DeProspero Declaration and the information in Footnote 6, J&M impermissibly attempts to expand DeProspero's opinions and the basis therefor.  (<u>Id.</u>)  HHT contends that this contravenes Federal Rule 26(a)(2) (<u>id.</u>), which requires the timely disclosure of expert reports, and requires that such reports contain a complete statement of all opinions the witness will express and the basis for those opinions.  Fed. R. Civ. P. 26(a)(2)(B)(i).

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), an expert witness is required to disclose a

---

[2] Footnote 6 provides:

In September 2014, HHT's counsel informally requested that Mr. DeProspero provide the documents he considered in deriving the 2.029 multiplier. Counsel for J&M responded that Mr. DeProspero disclosed all of the documents he considered in reaching that determination. It is now apparent that HHT believes Mr. DeProspero should have disclosed a schedule setting forth a calculation in support of the multiplier, but it never requested such a calculation, nor did Mr. DeProspero or J&M's counsel underst[an]d that to be the basis of HHT's request. Upon receipt of HHT's motion, counsel for J&M inquired of Mr. DeProspero the discount values he used to conclude that a reduction from a 3.5 to 2.029 multiplier was appropriate. Using his judgment and experience in valuation, he applied a price/book value multiple discount of 25.7% for J&M's lack of liquidity and marketability, and a price/book value multiple discount of 16.3% to discount the multiplier from 3.5 down to 2.029.

(Pl.'s Opp'n Mem. at 20, n.6 [Doc. No. 146].)

complete statement of all opinions that the witness will express, along with the basis for them, and the facts or data considered by the witness, as well as the witness's qualifications. Where a party fails to comply with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Court finds that while this supplemental information should have been timely disclosed pursuant to Rule 26, the failure to do so was harmless. Although the DeProspero Declaration provides greater detail concerning DeProspero's qualifications than that found in his expert report, the expert report nevertheless contains information concerning DeProspero's background and experience in this respect. (Cf. DeProspero Decl. ¶¶ 4-14 [Doc. No. 147] with DeProspero Report at 2, Ex. 1 to Hoversten Decl. [Doc. No. 136-1].)

Regarding the information in Footnote 6 of Plaintiff's opposition memorandum, this information explains, as a factual matter, why Plaintiff believed that it had previously disclosed the requested information concerning the multiplier that DeProspero used in determining J&M's book value. (Pl.'s Opp'n Mem. at 20, n.6 [Doc. No. 146].) In light of HHT's contention that the information was not disclosed, Footnote 6 also details how DeProspero determined the appropriate multiplier. (Id.) At the Court's request, Plaintiff provided DeProspero's more detailed explanation in a sworn statement. (Supp'l DeProspero Decl. [Doc. No. 154].) The Court likewise finds that the late disclosure of this information was harmless, as DeProspero provided the documents that he considered

in deriving the multiplier, and the additional information was disclosed prior to trial. Unlike the cases on which HHT relies in which evidence was excluded, see, e.g., Claar v. Burlington N.R.R. Co., 29 F.3d 499, 502 (9th Cir. 1994), RFMAS, Inc. v. Mimi So., 748 F. Supp. 2d 244, 277 (S.D.N.Y. 2010), DeProspero has explained his reasoning and methodology.  The sanction of excluding this information from DeProspero's opinion is not warranted under the circumstances here.

Accordingly, HHT's Motion to Strike is denied.  As to HHT's request for an expedited hearing on the motion, because the hearing was timely held, that portion of HHT's motion is denied as moot.

**B.     Daubert Motions**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted. Lauzon v. Senco Prods. Inc., 270 F.3d 681, 686 (8th Cir. 2001).  First, evidence based on scientific, technical, or specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  Id.  Second, the proposed witness must be qualified to assist the finder of fact.  Id.  Third, the proposed evidence must be reliable or trustworthy in the evidentiary sense, so that if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.  Id.  These requirements reflect the Supreme Court's analysis in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).  Id.  The district court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable."  Daubert, 509 U.S.

at 589.

Nonetheless, "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion. Lauzon, 270 F.3d at 686. Doubts regarding the usefulness of an expert's testimony should therefore be resolved in favor of admissibility, United States v. Finch, 630 F.3d 1057, 1062 (8th Cir. 2011), and gaps in an expert witness's qualifications or knowledge generally go to the weight of his testimony and not its admissibility. Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006). "The exclusion of an expert's opinion is proper only if it is 'so fundamentally unsupported that it can offer no assistance to the jury.'" Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997).

### 1. J&M's Expert, Michael DeProspero

Applying this test to DeProspero's proffered expert opinion, the Court first finds it to be relevant. HHT argues that DeProspero's valuation approach, which relies on Revenue Ruling 59-60, is not relevant to the calculation of damages. (Snelson Report at 8, Ex. 1 to Stilson Decl. [Doc. No. 142-1].) Instead, HHT contends, Revenue Ruling 59-60 is predominately only relevant for valuations of estate and gift taxes, as opposed to the calculation of damages. (Id. at 7-8.) It appears, however, that Revenue Ruling 59-60's general guidelines for evaluating closely-held corporations have been used in a variety of contexts – not merely in the estate and gift tax context. See, e.g., Estate of Doelle by Doelle v. United States, No. 4-70793, 1978 WL 4486, *8, n.3 (E.D. Mich. 1978) (noting that although the Ruling was devised for purposes of estate and gift taxes, the IRS has

recognized that it is equally applicable to valuing securities in income tax cases); Nardini v. Nardini, 414 N.W.2d 184, 190, n.4 (Minn. 1987) (stating, "Although Revenue Ruling 59-60 sets out the procedure used by the Internal Revenue Service for estate and gift tax valuation, we regard the eight fundamental factors therein identified as equally appropriate for use and analysis in determining the value of a closely held corporation as marital property for purposes of equitable distribution."); see also Scott Gabehart, Internal Revenue Rulings & Business Valuation, Biz Equity Blog (Sept. 11, 2012), http://blog.bizequity.com/2012/09/irs-revenue-ruling-59-60-and-business.html ("Even though Revenue Ruling 59-60 is now 53 years old, it remains the definitive outline of the approach, methods and factors to be considered in valuing shares of the capital stock of closely-held corporations.  Although initially presented for use in estate and gift tax calculations, its usage has spread as it is routinely referenced and used in the valuation of closely held businesses for various litigation purposes and its principles are applicable in the valuation of most closely-held business valuations.").  DeProspero himself has used this methodology to provide valuation analyses in the context of potential acquisitions of closely-held businesses.  (DeProspero Decl. ¶ 14 [Doc. No. 147].)  Accordingly, the Court finds that DeProspero's opinion, with its reliance on Revenue Ruling 59-60, is relevant to Plaintiff's damages calculations.

Second, the Court finds that DeProspero is qualified to offer his opinion in this case.  DeProspero is a Certified Financial Analyst ("CFA") and holds a Bachelor of Science Degree in Business, with a Finance major.  (DeProspero Report at 2, Ex. 1 to

9

Hoversten Decl. [Doc. No. 136-1]; DeProspero Decl. ¶ 7 [Doc. No. 147].) While HHT argues that DeProspero lacks experience in valuing small, closely-held businesses like J&M, DeProspero contends that he has worked in finance for over three decades and has valuation experience in a number of financial areas, including closely-held businesses. (Id.; DeProspero Decl. ¶ 11-14 [Doc. No. 147].) DeProspero is the President and Chief Investment Office of Mountain State Analytics, LLC, located in West Virginia, and has worked for the U.S. Department of Treasury, in addition to working in the private sector. (DeProspero Report at 2, Ex. 1 to Hoversten Decl. [Doc. No. 136-1].) Such qualifications are sufficient.

Third, the Court considers whether DeProspero's opinion is sufficiently reliable. Courts analyze reliability from a flexible, case-specific standpoint. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). In his expert report, DeProspero explained that he used a business valuation approach consistent with Revenue Ruling 59-60, "which is viewed universally as the guiding tool for determining fair market value of closely held companies. " (DeProspero Report at 3, Ex. 1 to Hoversten Decl. [Doc. No. 136-1].) Revenue Ruling 59-60 recognizes that "[a] determination of fair market value, being a question of fact, will depend upon the circumstances in each case," and no single formula is generally applicable to all valuation issues. (Rev. Rul. 59-60, 1959-1 C.B. 237 at §3, Ex. C to DeProspero Decl. [Doc. No. 147-1].) Rather, "[a] sound valuation will be based upon all the relevant facts, but the elements of common sense, informed judgment and reasonableness must enter into the process of weighing those facts and determining their

aggregate significance." (Id.) While no general formula applies to the many different valuation situations that may arise, Revenue Ruling 59-60 provides "the general approach, methods, and factors which must be considered" in conducting a valuation. (Id.) The Ruling states that the following factors are "fundamental," although not inclusive, and should be carefully analyzed when making a fair market valuation:

> (1) The nature of the business and the history of the enterprise from its inception.
>
> (2) The economic outlook in general and the condition and outlook of the specific industry in particular.
>
> (3) The book value of the stock and the financial condition of the business.
>
> (4) The earning capacity of the company.
>
> (5) The dividend-paying capacity.
>
> (6) Whether or not the enterprise has goodwill or other intangible value.
>
> (7) Sales of the stock and the size of the block of stock to be valued.
>
> (8) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.

(Id. § 4.)

In terms of the first and third factors listed above – the nature of the business and history of the company and the financial condition of the company – DeProspero considered the unique aspects of J&M's business, including the $300,000 annual cash flow that Kleeh family members derived from their employment at the company, and J&M's reluctance to utilize debt in its capital structure. (DeProspero Report at 3, Ex. 1 to

11

Hoversten Decl. [Doc. No. 136-1].)   HHT argues that DeProspero improperly considered income to Kleeh family members, who are non-parties to this litigation, in calculating damages.  (HHT's Mem. Supp. Mot. to Exclude DeProspero at 11-12 [Doc. No. 135].)  However, J&M responds that DeProspero examined the financial condition of J&M's business, which included consideration of income distributed to J&M's primary shareholders, the Kleehs, that would otherwise go to a buyer of J&M and its book value.  (Pl.'s Opp'n Mem. at 7 [Doc. No. 146].)   Plaintiff contends that a buyer might consider the Kleeh's income beneficial to the valuation of the business.  While HHT characterizes the consideration of Kleeh income as an improper part of Plaintiff's damages analysis, J&M does not seek to use this information in order to impermissibly recover damages on behalf of the Kleehs.  DeProspero considered this information in applying a Revenue Ruling 59-60 factor and consideration of this factor does not undercut the reliability of DeProspero's opinion.  HHT will have ample opportunity to cross-examine DeProspero and to present its rebuttal witness.  See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

HHT also contends that DeProspero should not have included a "net debt calculation." (Def.'s Mem. Supp. Mot. to Exclude DeProspero at 14-15 [Doc. No. 135].)  However, DeProspero explained that "[t]his measurement assumes that an acquirer seeks to retire (pay off) all outstanding debt of the company using internal cash resources."

(DeProspero Report at 5, Ex. 1 to Hoversten Decl. [Doc. No. 136-1].)  DeProspero explained that because J&M had significantly more cash on hand as of December 31, 2011, as opposed to net debt, he accounted for this factor in his valuation of J&M.  Again, HHT is free to challenge DeProspero's opinion on this basis on cross-examination and through the testimony of its rebuttal witness.

In determining J&M's valuation, DeProspero also considered another aspect of the third 59-60 Revenue Ruling factor – J&M's book value.  (DeProspero Report at 3, Ex. 1 to Hoversten Decl. [Doc. No. 136-1].)  DeProspero examined the shareholder equity in J&M's business, as reported in J&M's financial statements at the end of 2011 – $693,287.[3]  (Id. at 4.)  DeProspero applied a multiplier of 2.2029 to reach a book value of $1,406,432.  (Id.)  DeProspero examined J&M's financial statements, as well as the public stock of HHT's parent, HNI, which DeProspero used as a comparison point for valuation in the industry overall.  (Id.)  DeProspero used this information to determine that the value of J&M's business at the end of 2011 was approximately $3,487,664.  (Id. at 5.) While HHT argues that DeProspero failed to explain how he calculated the multiple used to determine J&M's shareholder equity valuation, the Supplemental DeProspero Declaration [Doc. No. 154] adequately explains this calculation.  The Court does not find that DeProspero's opinions are unreliable on this basis.

---

[3] DeProspero explained in his report that he used December 31, 2011 as the valuation date because it coincides with the last full fiscal year prior to the termination of the relationship between J&M and HHT.  (DeProspero Report at 3, Ex. 1 to Hoversten Decl. [Doc. No. 136-1].)

DeProspero also calculated the net profits that would have been earned by J&M had it made certain sales, which J&M claims it would have made, absent HHT's conduct. (Id. at 5.) HHT attacks this part of DeProspero's opinion, arguing that DeProspero is not qualified to opine on the calculation of lost profits and that his opinion is unsupported. The Court finds that DeProspero is qualified to opine on Plaintiff's damages, including net profits. As noted, any gaps in an expert witness's qualifications or knowledge apply more to the weight of the expert's testimony and not its admissibility. Robinson, 447 F.3d at 1100. DeProspero explained how he arrived at this calculation in his report and HHT will have a full opportunity to explore the basis for this portion of DeProspero's opinion on cross examination and through the testimony of HHT's own witness.

Because the Court finds DeProspero to be a qualified witness whose proffered opinion is relevant and reliable, it denies HHT's motion to exclude DeProspero's opinions and testimony.

### 2. HHT's Expert, Melissa Snelson

As noted, J&M does not challenge the qualifications of HHT's expert to opine regarding damages, nor does J&M seek to exclude the entirety of her opinion. (Pl.'s Mot. to Exclude Portions of Snelson Testimony & Opinions at 2, n.1 [Doc. No. 141].) Rather, J&M moves to exclude portions of Snelson's opinion that primarily pertain to questions of liability, or do not otherwise pertain to the calculation of damages. (Id. at 5-16.) Plaintiff specifically seeks to exclude the following opinions:

- "It appears that HHT had cause for termination" (Snelson Report at 5, Ex. 1 to Stilson Decl. [Doc. No. 142-1];

- After reciting reasons from internal HHT documents disputed by J&M, Snelson states "even if HHT could not terminate J&M except with cause, I understand that any of those reasons could constitute cause for termination, which would mean J&M would have no recoverable damages" (Id. at 5-6);

- Snelson's statements that the provisions of the expired 2006 distributorship agreement between J&M and HHT provide a limitation on the damages available to J&M in this action (Id. at 6);

- "It is commercially unreasonable to assume that HHT would agree to enter into an oral agreement with terms less favorable than it had with its other distribution customers and substantially less favorable than those in the [expired 2006] Distribut[orship] Agreement" (Id.);

- HHT "detailed multiple issues with J&M at least a year before the distributorship was terminated" and there was "an expectation that J&M's owner, James Kleeh, would retire in the foreseeable future" (Id. at 10);

- J&M's damages could be limited to 2012 "because any number of things could have happened in the latter half of 2012 that would have constituted cause for termination" (Id. at 11);

- "It is my understanding that numerous concerns HHT had with J&M, the documented strain in their relationship, and James Kleeh's pending retirement were ongoing issues that could have become even more problematic at the time. A host of other issues could have arisen at any time that would have given HHT 'a reason to justify; terminating J&M." (Id.)

(Pl.'s Mem. Supp. Mot. to Exclude Snelson at 5-6 [Doc. No. 141])

In addition, J&M seeks to exclude the portion of Snelson's opinion in which Snelson contends that DeProspero failed to explain how certain sales were lost. (Id. at 6.) Specifically, Snelson states:

15

> Mr. DeProspero states that he has "been provided with certain total sales and have been asked to calculate the net profits that would have been earned." This calculation, resulting i[n] alleged lost profits of approximately $178,000, is completely unsupported. Mr. DeProspero does not indicate who provided him with the sales numbers, why J&M suffered these alleged losses, how these sales losses were calculated or how HHT allegedly caused these losses. For example, the DeProspero Report does not explain what "Lost Parkersburg Sales" or "Lost Lead Time Orders-2012" means, why these sales were allegedly lost or how HHT allegedly caused these losses. Nor does Mr. DeProspero indicate how, or if, he has determined that the allegedly lost 2012 sales of over $440,000 are not already accounted for in his business valuation calculation. In other words, these purported damages are completely unsupported and unreliable. Further, it is very difficult to respond to this calculation at this time as no support or even assumptions were provided by Mr. DeProspero. If information regarding this calculation is provided in the future, I may respond if appropriate. Until such time, in my opinion, these losses are completely without merit.

(Snelson Report at 14, Ex. 1 to Stilson Decl. [Doc. No. 142-1].)

As noted, Rule 702 of the Federal Rules of Evidence applies to the admissibility of expert testimony. Such evidence must be useful to the trier of fact in deciding an ultimate issue of fact, the witness must be qualified as an expert, and the proposed evidence must be reliable or trustworthy. Lauzon, 270 F.3d 686 (8th Cir. 2001). "Where the subject matter [of expert testimony] is within the knowledge or experience of lay people, expert testimony is superfluous." Ellis v. Miller Oil Purchasing Co., 738 F.2d 269, 270 (8th Cir. 1984) (citing Bartak v. Bell-Galyardt & Wells, Inc., 629 F.2d 523, 530 (8th Cir. 1980)). Put another way, an expert who "draws inferences or reaches conclusions within the jury's competence," does not provide useful or helpful testimony to the jury, as required by Rule 702. Somnis v. Country Mut. Ins. Co., 840 F.2d 1166, 1173 (D. Minn.

2012). Because "[e]xpert evidence can be both powerful and quite misleading," Daubert, 509 U.S. at 595, 113 S. Ct. 2786, courts are careful to exclude such testimony if it might lead the jury to simply rely on the expert's opinion and "surrender[ ][its] own common sense in weighing testimony." Westcott v. Crinklaw, 68 F.3d 1073, 1076 (8th Cir.1995) (citations omitted). In addition, although an expert may be qualified, the court must continue to perform its gatekeeping role, ensuring that the particular testimony "does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable." Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001).

Although Snelson opines that she merely assumed liability for purposes of conducting her damages analysis (Snelson Report at 2, Ex. 1 to Stilson Decl. [Doc. No. 142-1]), her opinion ventures beyond simple assumptions, addressing the question of whether HHT's termination was for cause. Snelson states: (1) "it appears that HHT had cause for termination;" (2) "even if HHT could not terminate J&M except with cause, I understand that any of those reasons could constitute cause for termination, which would mean J&M would have no recoverable damages;" (3) HHT "had detailed multiple issues with J&M at least a year before the distributorship was terminated;" and (4) that there were "numerous concerns HHT had with J&M, the documented strain in their relationship, and James Kleeh's pending retirement were all ongoing issues." (Id. at 5-6, 10.) These statements do not concern the calculation of damages – Snelson's area of expertise – and many of them relate directly to issues of liability. Snelson possesses no

17

expertise to offer such opinions. Moreover, the resolution of whether HHT's termination was for cause is for the jury to determine and any expert testimony to this effect both invades the province of the jury and is superfluous. See Robertson v. Norton Co., 148 F.3d 905, 908 (8th Cir. 1998).

Plaintiff also challenges portions of Snelson's Report that discuss whether HHT had the ability to terminate J&M at some future time. Snelson refers to the "expectation that J&M's owner, James Kleeh, would retire in the foreseeable future" – which might influence HHT's decision to terminate J&M. (Snelson Report at 10, Ex. 1 to Stilson Decl. [Doc. No. 142-1].) Additionally, Snelson speculates that J&M's damages should be limited to 2012 "because any number of things could have happened in the latter half of 2012 that would have constituted cause for terminations" and "numerous concerns HHT had with J&M, the documented strain in their relationship, and James Kleeh's pending retirement were ongoing issues that could have become even more problematic at the time. A host of other issues could have arisen at any time that would have given HHT a reason to justify terminating J&M." (Id. at 11.) As with the previous opinions concerning cause for termination, Snelson lacks the qualifications to address these issues, which are within the province of the jury. Additionally, these statements are speculative and irrelevant – whether HHT could have terminated J&M in the future does not relate to HHT's termination of its relationship with J&M in March 2012 and the resulting losses that J&M alleges that it sustained. Additionally, Snelson's statements related to

termination are potentially prejudicial and confusing to the jury.  See Daubert, 509 U.S. at 595.

Finally, Snelson opines that the nine-month notice provision in the expired 2006 distributorship agreement between J&M and HHT limits the damages available to J&M. (Snelson Report at 6, Ex. 1 to Stilson Decl. [Doc. No. 142-1].)  In her deposition, Snelson testified that the relevance of the expired 2006 agreement was a "liability issue." (Snelson Dep. at 17, 30, Ex. 2 to Stilson Decl. [Doc. No. 142-2].)  The Court finds that the effect of the agreement is for the jury to consider and Snelson's interpretation of the agreement is also irrelevant to her opinion.

Snelson further opines that it is "commercially unreasonable to assume that HHT would agree to enter into an oral agreement with terms less favorable than it had with its other distribution customers and substantially less favorable than those in the [expired 2006] Distribution Agreement." (Snelson Report at 6, Ex. 1 to Stilson Decl. [Doc. No. 142-1].)  Snelson is not qualified to render opinions about the "commercial reasonableness" of HHT's conduct, nor is such an opinion relevant to the determination of J&M's damages.  Accordingly, for all of these reasons, any such opinions are not admissible.

For all for of these reasons, the Court grants J&M's motion to exclude portions of Snelson's Report and testimony, as discussed herein.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. HHT's Motion to Exclude the Expert Testimony and Opinions of Michael DeProspero [Doc. No. 133] is **DENIED**;

2. Plaintiff's Motion to Exclude Certain Testimony and Opinions of Melissa Snelson [Doc. No. 139] is **GRANTED**; and

3. HHT's Motion to Strike the Supplemental Testimony of Michael DeProspero and for an Expedited Hearing [Doc. No. 148] is **DENIED in part** as to striking the expert's supplemental testimony, and **DENIED AS MOOT in part** as to the request for an expedited hearing.

Dated:   January 9, 2015

s/Susan Richard Nelson  
SUSAN RICHARD NELSON  
United States District Court Judge